IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES WILLIAM QUARLES, a/k/a JAY ROCK,<br><br>Defendant. | Case No. 3:19-cr-137<br><br>**PLEA AGREEMENT** |

Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Drew H. Wrigley, United States Attorney for the District of North Dakota, and Dawn M. Deitz, Assistant United States Attorney; Defendant, JAMES WILLIAM QUARLES, a/k/a JAY ROCK JAMES WILLIAM QUARLES, a/k/a JAY ROCK; and Defendant's counsel, Tyler Morrow, agree to the following:

1.      Defendant acknowledges the Information charges violations of Title 18 U.S.C. §§ 1512(b)(1), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 2; and 21 U.S.C. §§ 846, 848(a), 848(c).

2.      Defendant has read the charges and Defendant's attorney has fully explained the charges to Defendant.

3.      Defendant fully understands the nature and elements of the charged crimes.

4.      Defendant will voluntarily plead guilty to Counts One, Two, and Three of the Information, and admit to forfeiture allegation.

5.  The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6.  Defendant will plead guilty because Defendant is in fact guilty of the charges. In pleading guilty to Counts One, Two, and Three, Defendant acknowledges that:

>   Count One – Continuing Criminal Enterprise
>   a.  From in or about 2016 to August 2019, in the District of North Dakota, Michigan, and elsewhere, the Defendant did knowingly and intentionally engage in a Continuing Criminal Enterprise in that he violated Title 21, United States Code, Sections 812, 813, 841(a)(1), and 846, including, but not limited to, the violations alleged in Count Two of this Information, which are incorporated herein by reference. The described violations were, and are, part of a continuing series of violations.
>   These continuing series of violations were undertaken by JAMES WILLIAM QUARLES A/K/A JAY ROCK, in concert with at least five other persons with respect to whom JAMES WILLIAM QUARLES A/K/A JAY ROCK, occupied a position of organizer, supervisor, and manager including, but not limited to: (1) J.C.; (2) ANDREA TERRANCE JOHNSON A/K/A TJ; (3) DEANTE EDWARDS A/K/A TAY; (4) ROGER RACHON COOLEY; and (5) ANDREA BELGARDE.
>   From this continuing series of violations, JAMES WILLIAM QUARLES A/K/A JAY ROCK, obtained a substantial income.
>   The United States specifically alleges that JAMES WILLIAM QUARLES A/K/A JAY ROCK, was the principal administrator, organizer, and leader of the enterprise.
>   b.  The Defendant acknowledges sufficient facts exist to sustain a finding of guilt

beyond a reasonable double in violation of Title 21, United States Code, Sections 848(a) and 848(c).

Count Two – Conspiracy to Distribute and Possess with Intent to Distribute (Oxycodone)

a. From in or between 2016 through August 2019, in the District of North Dakota, and elsewhere, the Defendant did knowingly and intentionally combine, conspire, confederate, and agree together and with others, both known and unknown to the grand jury, to possess with intent to distribute and distribute a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

b. In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts: It was a part of said conspiracy that one or more of the conspirators transported oxycodone, a Schedule II controlled substance, from the State of Michigan into the State of North Dakota; It was a part of said conspiracy that one or more conspirators would and did distribute and possess with intent to distribute a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in and near Belcourt, North Dakota, and elsewhere; It was further a part of said conspiracy that certain conspirators distributed oxycodone, a Schedule II controlled substance, to another person; It was further a part of said conspiracy that certain conspirators sought and located users of oxycodone, a Schedule II controlled substance, to purchase controlled substances from other conspirators; It was further a part of said conspiracy that certain conspirators sought and located sub-distributors of oxycodone, a Schedule II controlled substance, for other conspirators; It was further a part of said conspiracy that ANDREA BELGARDE introduced JAMES WILLIAM QUARLES, a/k/a JAY ROCK, and others for the purpose of further distributing oxycodone, a Schedule II controlled substance, in and near Belcourt, North Dakota, and elsewhere; It was further a part of said conspiracy that CARLEEN COUNTS, a/k/a BIG CAR, ANDREW AARON BRASWELL, JOSHUA ROBERT LILLEY, and others did occupy houses in and about Belcourt, North Dakota, and elsewhere, from which to store, possess, and distribute oxycodone, a Schedule II controlled substance; It was further a part of said conspiracy that the defendants and others would and did attempt to conceal their activities; It was further a part of said conspiracy that one or more conspirators possessed firearms to protect their supply of controlled substances and their drug trafficking activity; It was further a part of said conspiracy that JAMES WILLIAM QUARLES, a/k/a JAY ROCK, did kidnap and hold for ransom J.C. until repayment of lost drug proceeds; It was further a part of said conspiracy that the defendants and others would and did use United States currency and other forms of currency in their

drug transactions; It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities, including cellular telephones, to facilitate the distribution of controlled substances; and It was further a part of said conspiracy that one or more conspirators collected money from other persons to purchase a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance;

c. The Defendant further acknowledge sufficient facts exist to sustain a finding of guilt beyond a reasonable doubt in violation of Title 21, United States Code, Section 846; <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946).

Count Three – Conspiracy to Commit Money Laundering

a. Beginning in or about 2016 and continuing until in or about February 2019, in the District of North Dakota, and elsewhere, the Defendant did knowingly combine, conspire, and agree with one or more persons, both known and unknown to the grand jury, to commit offenses against the United States, in violation of Title 18, United States Code, Section 1956(h), to wit: to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, knowingly and intentionally distributing controlled substances: (a) with intent to promote the carrying on of the specified unlawful activity; and (b) knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity;

b. The manner and means used to accomplish the objectives of the conspiracy included, among others, the following: JAMES WILLIAM QUARLES, a/k/a JAY ROCK, and co-conspirators, acquired oxycodone, a Schedule II controlled substance, outside of the District of North Dakota for distribution. The oxycodone was thereafter transported through, and distributed in, the District of North Dakota, and elsewhere, during the time frame of the conspiracy; Members of the controlled substance distribution conspiracy organization would sell oxycodone, a Schedule II controlled substance, and currency would be collected and transferred from one person to another to continue the ongoing illegal activity; and During the course of this conspiracy, persons known and unknown to the grand jury utilized money transfer services, such as MoneyGram, to wire and transfer proceeds of the illegal drug sales from North Dakota to Michigan, and elsewhere, with intent to disguise and conceal the nature, the location, the source, the ownership, and the control of the proceeds of the drug trafficking activity, and to promote and continue the distribution activity;

c. The Defendant acknowledges sufficient facts exist to sustain a finding of guilty beyond a reasonable doubt in violation of Title 18, United States Code, Section 1956(h).

7.     Defendant understands the following maximum penalties apply:

### Count One – Continuing Criminal Enterprise

| | |
|---|---|
| Imprisonment: | Life (20 years minimum mandatory) |
| Fine: | $2,000,000 |
| Supervised Release: | 5 years |
| Special Assessment: | $100 |

### Count Two – Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance

| | |
|---|---|
| Imprisonment: | 20 years |
| Fine: | $1,000,000 |
| Supervised Release: | 3 years mandatory |
| Special Assessment: | $100 |

### Count Three – Money Laundering Conspriacy

| | |
|---|---|
| Imprisonment: | 20 years |
| Fine: | $250,000 |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |

Defendant understands the Court has the discretion to run each count consecutive to one another. Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8.     Defendant understands that by pleading guilty Defendant surrenders rights, including:

    (a)    The right to a speedy public jury trial and related rights as follow:

        (i)    A jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by

5

exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

(ii)   If a trial were held without a jury, then the Judge would find the facts and determine whether Defendant was guilty beyond a reasonable doubt.

(iii)   At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

(iv)   At a trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn from Defendant's refusal to testify. Defendant can choose to testify, but cannot be required to testify.

(b)   Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's criminal conduct to ensure that there is a factual basis for Defendant's plea.

9. Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10. The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a), and must consult and take into account the United States' Sentencing Commission, <u>Guidelines Manual</u>, (Nov. 2018) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

11. This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12. Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13. The parties agree that the following sentencing guidelines are applicable under the Sentencing Guidelines for Defendant's conduct:

| | | |
|---|---|---|
| Continuing Criminal Enterprise | 38 | (USSG § 2D1.5) |
| Money Laundering | +2 | (USSG § 2S1.1(b)(2)(B)) |

The United States reserves the right to argue a higher offense level at sentencing if it is determined through the pre-sentence investigation that Defendant is a "career offender" pursuant to USSG § 4B1.1.

14. At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15. The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16. Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to

determining the Sentencing Guideline range. The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the Sentencing Guidelines' Commission to justify the departure. Both parties reserve the right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines "departure"). There may be other adjustments the parties have not agreed upon.

17.   At sentencing, the United States will:

   (a)   Recommend a sentence within the applicable Guideline range, or the minimum mandatory, whichever is greater;

   (b)   Recommend that Defendant be ordered to a reasonable period of supervised release;

   (c)   Recommend that Defendant be ordered to pay the special assessment fees; and

   (d)   Move to dismiss the Superseding Indictment.

18.   Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against

Defendant and to use any information obtained directly or indirectly from Defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

19. Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Information will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

21. **Defendant's Waiver of Appeal.** Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby

knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack: Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver

22.  By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

23.  Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

24. The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

25. Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:

DREW H. WRIGLEY
United States Attorney

Dated: 10/23/20

By: DAWN M. DEITZ
Assistant United States Attorney

Dated: 10-14-20

JAMES WILLIAM QUARLES, A/K/A JAY ROCK
Defendant

Dated: 10.14.20

TYLER MORROW
Attorney for Defendant

12